WICKER, Judge.
Bruce C. Tantillo appeals a judgment decreeing him to be the father of the minor child, M.M.T. The appellees are the State of Louisiana and M.M.T.’s mother, Anne M. Adam. We affirm.
Tantillo, a Jefferson Parish resident, has two half-siblings living in New York state. He visited them from October 1983 until January 1984. Adam was the children’s baby sitter. She gave birth to M.M.T. on August 14, 1984, using Tantillo as the baby’s last name. The state and Adam brought U.R.E.S.A. proceedings against him in 1991, seeking establishment of paternity, confinement costs, support, and medical coverage.
Tantillo denied he was the father of this child; and blood tests for him, the mother, and the child were ordered. The results showed paternity probability of 99.95 percent, with a combined paternity index of 2181 to 1. In addition to denying paternity, Tantillo raised additional defenses: he was a minor at the time of the conception and was unlawfully seduced by the then-thirty-two-year old Adam; Adam had three illegitimate children born to three different men and was a career welfare recipient; and Tantillo was unable to provide support or medical costs for M.M.T.
The evidence of paternity consisted of Adam’s affidavit that she had intercourse with Tantillo between November of 1983 and January of 1984 and that she had no other lovers during that period of time, the blood test results, and Tantillo’s admission that he had intercourse with Adam one time around October of 1983.
Tantillo testified that while he was watching television with Adam, she gave him whiskey to drink and made passes at him. He said no, but she continued. He was intoxicated, and they had sex just this one time. He also testified she told him she didn’t want to work for a living but would rather stay home and run a day care center out of her home. She could get welfare and food stamps and put the cash in her pocket at the end of the week. In January of 1984, Adam called him to tell him she was pregnant. He asked her if it was his and, if so, to either put it up for adoption or abort it. He testified she called one additional time, at M.M.T.’s birth, to advise him that the boy had been *347 born and that she was putting his name on the birth certificate. Since the birth of M.M.T., according to the affidavit and Tan-tillo, Adam has given birth to an additional child.
Based upon this evidence, the judge ruled Tantillo to be the father. She also found Tantillo’s defense that he cannot be held accountable because he was a minor at the time of the conception was without merit and that his claim that Adam had other illegitimate children and was on welfare was immaterial. She reasoned in part that if Tantillo’s parental duty to support his child depended upon his being a major at the time of conception:
minor males could impregnate with impunity, minor females could abandon their children without fear of any type of repercussion.... Children, regardless of the circumstances surrounding their birth deserve the support of their parents.
With regard to the allegations of Adam’s status as a welfare mother of illegitimate children:
[BJeing on public assistance has nothing to do with her credibility....
[Wjhether Ms. Adam has or has not ... “made a lifestyle out of having illegitimate children and seeking the support of the state”, has nothing to do with the determination of paternity and support concerning the child, M.M.T. The child is not to be penalized for his mother’s actions or inactions, or for her decisions as to how she has chosen to live her life. Certainly, no matter what the moral character of Ms. Adam, the child, M.M.T. is entitled to a determination of his paternity and resulting support from his father.
A decision on support and Tantillo’s defense of inability to pay was set for another date, but it has since been continued without date pending a decision of this court. Tantillo moved for a new trial on the grounds that the defense of minority was not considered. The judge denied the motion.
Tantillo argues that it was error for the judge to deny the defense of seduction and lack of consent and to deny him the opportunity to present evidence that Adam “intentionally seduced [him] for the purposes of conceiving yet another illegitimate child in order to continue to receive child welfare benefits.” He cites no law in support of either position.
The fact of paternity obliges a father to support his child. Dubroc v. Dubroc, 388 So.2d 377 (La.1980); La.C.C. art. 240. The fact of paternity, however, must be proved by a preponderance of the evidence. La.C.C. art. 209A; Didier v. Fasola, 597 So.2d 450 (La.App.lst Cir.1991). We find that such proof has been made: the results of blood testing showing a 99.95 percent probability of fatherhood; the testimony of the mother that she had intercourse with Tantillo, and only Tantillo, around the time of conception; and Tantil-lo’s admission that he had intercourse with Adam around the time of conception. This was a factual issue, and we cannot say the judge was clearly wrong. Didier v. Fasola, supra.
We decline to rule that either the youth of the father or the alleged morals of the mother are relevant to the right of the innocent child to support. We affirm the judgment decreeing Bruce A. Tantillo to be the father of the minor, M.M.T. Tantillo must pay the costs of this appeal.
AFFIRMED